IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————————

No. 22-4322

—————————————

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

MICHAEL SCOTT HOOVER,

*Defendant – Appellant.*

—————————————

Appeal from the United States District Court
for the Western District of North Carolina

*The Honorable Kenneth D. Bell, District Judge*

—————————————

BRIEF OF THE UNITED STATES

—————————————

Dena J. King
United States Attorney

Anthony J. Enright
Assistant United States Attorney
United States Attorney's Office
227 West Trade Street
Carillon Building, Suite 1650
Charlotte, North Carolina 28202
(704) 344-6222

*Attorneys for the United States of America*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ v

JURISDICTIONAL STATEMENT ........................................................ 1

ISSUES PRESENTED .............................................................................. 1

STATEMENT OF THE CASE ................................................................ 3

      A.    Hoover encourages two boys to masturbate and captures videorecordings of them doing so. ........................................... 3

      B.    Hoover's employer and police discover the videos after Hoover's arrest for exploiting other children. ....................... 6

      C.    A jury convicts Hoover of child-pornography offenses. .......... 7

      D.    The district court sentences Hoover to 840 months' imprisonment. ...................................................................... 12

SUMMARY OF THE ARGUMENT ...................................................... 22

ARGUMENT

I.    The district court acted within its discretion and did not plainly err when admitting evidence of search terms Hoover used and his victims' testimony about Hoover's conduct before he recorded them. ................................................................................ 25

      A.    Standard of Review ............................................................ 25

i

B.    Discussion ................................................................. 28

 1.    The district court properly admitted, without objection, evidence of searches Hoover conducted on his phone. .................................................. 28

 2.    The district court properly allowed A.P. and M.C. to testify about Hoover's sexual advances and conduct before Hoover recorded these victims. ......................... 37

II.    Sufficient evidence supports Hoover's convictions. ...................... 41

A.    Standard of Review .............................................. 41

B.    Discussion ............................................................. 42

III.    The district court properly instructed the jury about 18 U.S.C. § 2251(a)(1)'s purpose element ...................................... 48

A.    Standard of Review .............................................. 48

B.    Discussion ............................................................. 49

IV.    The district court properly sentenced Hoover to 840 months in prison for his child-exploitation offenses. ................................... 51

A.    Standard of Review .............................................. 51

B.    Discussion ............................................................. 52

 1.    The district court properly determined Hoover's advisory guideline range. ............................................. 52

  a.    The district court properly applied the Sentencing Guidelines' grouping rules. ..................................... 55

b. The district court properly applied U.S.S.G. § 2G2.1(b)(2)(A) because the offense involved "the commission of a sexual act or sexual contact.".. .....59

c. The district court properly applied § 2G2.1(b)(5) of the Guidelines because Hoover was a relative or person with custody, care, or supervisory control of the minor involved in the offense............................60

d. The probation office properly evaluated § 2G2.2(b)(5) of the Guidelines because Hoover engaged in a pattern of sexual abuse or exploitation, although the section ultimately played no role in Hoover's offense level. ......................................................................61

     i. The probation office properly evaluated § 2G2.2(b)(5) when determining Hoover's initial offense level under the possession guidelines........................................................61

     ii. The probation office's analysis of § 2G2.2(b)(5) is harmless......................................................64

e. The district court properly applied § 2G2.2(c)(1), which cross-references the guideline for production of child pornography................................................65

f. The district court properly applied § 4B1.5(b)(1), because Hoover engaged in a pattern of activity involving prohibited sexual conduct. ......................66

iii

2.    The district court appropriately considered Hoover's
arguments for a lower sentence....….............................. 67

CONCLUSION  ....................................................................... 70

REQUEST FOR DECISION ON THE BRIEFS WITHOUT
ORAL ARGUMENT ............................................................ 70

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iv

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Greer v. United States,*
   141 S. Ct. 2090 (2021) ........................................................ 36

*United States v. Allere,*
   430 F.3d 681 (4th Cir. 2005) ............................................... 41

*United States v. Arbaugh,*
   951 F.3d 167 (4th Cir. 2020) ............................................... 28

*United States v. Beasley,*
   824 F. App'x 154 (4th Cir. 2020) ................................... 54, 64

*United States v. Bell,*
   901 F.3d 455 (4th Cir. 2018) ......................................... 34, 35

*United States v. Bennett,*
   698 F.3d 194 (4th Cir. 2012) ............................................... 52

*United States v. Burgos,*
   94 F.3d 849 (4th Cir. 1996) ................................................ 41

*United States v. Bush,*
   944 F.3d 189 (4th Cir. 2019) ....................................... passim

*United States v. Cardwell,*
   433 F.3d 378 (4th Cir. 2005) ............................................... 40

*United States v. Chon,*
   713 F.3d 812 (5th Cir. 2013) ............................................... 54

v

*United States v. Chong Lam,*
   677 F.3d 190 (4th Cir. 2012) .................................................. 42, 44, 60

*United States v. Cox,*
   744 F.3d 305 (4th Cir. 2014) ........................................................ 65, 66

*United States v. Davis,*
   855 F.3d 587 (4th Cir. 2017) ....................................................... passim

*United States v. Dowell,*
   771 F.3d 162 (4th Cir. 2014) ............................................................. 66

*United States v. Duroseau,*
   26 F.4th 674 (4th Cir. 2022) .............................................................. 42

*United States v. Ebert,*
   61 F.4th 394 (4th Cir. 2023) .............................................................. 34

*United States v. Engle,*
   676 F.3d 405 (4th Cir. 2012) ........................................................ 43, 44

*United States v. Farrell,*
   921 F.3d 116 (4th Cir. 2019) ............................................................. 26

*United States v. Ferguson,*
   778 F.2d 1017 (4th Cir. 1985) ........................................................... 28

*United States v. Fowler,*
   58 F.4th 142 (4th Cir. 2023) ....................................................... passim

*United States v. Hastings,*
   134 F.3d 235 (4th Cir. 1998) ............................................................. 36

*United States v. Jones,*
716 F.3d 851 (4th Cir. 2013) ....................................................57, 58

*United States v. Keita,*
742 F.3d 184 (4th Cir. 2014) ............................................................27

*United States v. Lynn,*
592 F.3d 572 (4th Cir. 2010) .......................................................51, 52

*United States v. Mack,*
56 F.4th 303 (4th Cir. 2022) .............................................................69

*United States v. Mason,*
532 F. App'x 432 (4th Cir. 2013) ......................................................40

*United States v. McCauley,*
983 F.3d 690 (4th Cir. 2020) ..................................................... passim

*United States v. Miltier,*
882 F.3d 81 (4th Cir. 2018) ........................................................29, 47

*United States v. Muslim,*
944 F.3d 154 (4th Cir. 2019) ............................................................37

*United States v. Odum,*
65 F.4th 714 (4th Cir. 2023) .............................................................69

*United States v. Palomino-Coronado,*
805 F.3d 127 (4th Cir. 2015) ............................................ 29, 46, 50, 51

*United States v. Pena,*
952 F.3d 503 (4th Cir. 2020) ............................................................51

*United States v. Rodriguez,*
No. 21-10355, 2022 WL 1788818 (11th Cir. June 2, 2022)...... 31, 33, 35

*United States v. Sebolt,*
554 F. App'x 200 (4th Cir. 2014) ................................................. 33, 35

*United States v. Shafter,*
573 F.3d 267 (6th Cir. 2009) ............................................................. 59

*United States v. Slocum,*
646 F. App'x 294 (4th Cir. 2016) ...................................................... 54

*United States v. Stamper,*
106 F. App'x 833 (4th Cir. 2004) ...................................................... 40

*United States v. Sueiro,*
59 F.4th 132 (4th Cir. 2023) .............................................................. 69

*United States v. Thompson,*
807 F. App'x 251 (4th Cir. 2020) ...................................................... 49

*United States v. Torres,*
894 F.3d 305 (4th Cir. 2020) ............................................................. 46

*United States v. Under Seal,*
709 F.3d 257 (4th Cir. 2013) ............................................................. 58

*United States v. Zayyad,*
741 F.3d 458 (4th Cir. 2014) ............................................................. 26

*United States v. Toler,*
901 F.2d 399 (4th Cir. 1990) ............................................................. 56

**<u>Statutes</u>**

18 U.S.C. chapter 110 ........................................................................ 39

18 U.S.C. § 2241(c) ............................................................................ 62

18 U.S.C. § 2243 ................................................................................ 62

18 U.S.C. § 2246(3) ..........................................................................59

18 U.S.C. § 2251 ...................................................................... passim

18 U.S.C. § 2252A...................................................... 7, 39, 43, 44

18 U.S.C. § 3231 ................................................................................1

18 U.S.C. § 3553(a) ................................................................ 68, 69

28 U.S.C. § 1291 ................................................................................1

**<u>Rules and Guidelines</u>**

Fed. R. Crim. P. 12(b)(3)(D) ......................................................27

Fed. R. Crim. P. 29 ............................................................... 11, 41

Fed. R. Crim. P. 51(b)....................................................................52

Fed. R. Evid. 103(a)(1)(B)............................................................26

Fed. R. Evid. 404(b) ........................................................ 7, 30, 34

Fed. R. Evid. 414(a) ....................................................... 38, 39, 40

U.S.S.G. § 4B1.5(b)(1) ............................................................ 15, 16

U.S.S.G. Ch. 5................................................................... 15, 18, 54

## JURISDICTIONAL STATEMENT

Michael Scott Hoover challenges his convictions for child-pornography offenses after a jury trial, and his sentence.   A statute, 18 U.S.C. § 3231, conferred jurisdiction on the district court (Hon. Kenneth D. Bell, J.).   Hoover filed a timely notice of appeal on May 27, 2022, four days after the court entered its written judgment, J.A. 321–330, and 28 U.S.C. § 1291 confers jurisdiction on this Court.

## ISSUES PRESENTED

I.     A jury convicted Hoover of producing and possessing sexually explicit videos and images of minor boys.   Did the district court plainly err by admitting evidence of Hoover's web searches for similar content and the victims' own testimony about Hoover's sexual conduct and advances before he produced the videos and images?

II.    The jury heard that Hoover persuaded multiple young victims to masturbate and captured multiple videos and still images of the boys using an iPhone imported from China.   Does sufficient evidence support the jury's finding that Hoover produced and possessed

child pornography under statutes requiring a connection to interstate commerce?

III.    The child-pornography-production statute under which Hoover was convicted requires proof that producing a visual depiction was a significant or motivating purpose.   Did the district court act within its discretion when it instructed the jury that the United States had to prove that producing a visual depiction "was a significant or motivating purpose"?

IV.    The district court sentenced Hoover to a guideline sentence of 840 months after rejecting numerous bare-bones objections to adjustments under the United States Sentencing Guidelines and explicitly considering each of the three arguments he made for a downward variance.   Did the district court impose a procedurally reasonable sentence for Hoover's conduct, which involved Hoover's sexual exploitation of eight minor victims?

## <u>STATEMENT OF THE CASE</u>

### A.    Hoover encourages two boys to masturbate and captures videorecordings of them doing so.

A.P. and M.C. were relatives of Hoover who met Hoover later in life, though while they were still minors.   J.A. 174, J.A. 197, J.A. 451–452, 470.   Although they are not Hoover's only two victims, the testimony introduced during Hoover's trial focused on Hoover's sexual abuse of these two boys.   J.A. 173–212

Hoover began to engage in conduct that made A.P. uncomfortable shortly after A.P. met Hoover.   J.A. 199.   When the two were alone in Hoover's truck, Hoover put his hand on A.P.'s inner thigh and spoke to A.P. "in a sexual way."   J.A. 199–201.   A.P. — who was "about 15" at the time — told Hoover to stop, and Hoover did.   J.A. 201.   During a hike, Hoover told A.P. to "take off his clothes."   J.A. 199–200.   A.P. nevertheless visited Hoover alone because Hoover gave him alcoholic beverages.   J.A. 203.

Hoover showed A.P. pornography and encouraged A.P. to masturbate while he watched.   J.A. 204.   Hoover often brought up

3

masturbation to A.P.   J.A. 203.   And Hoover "[f]requently" made comments "indicating that he had seen [A.P.] masturbate."   J.A. 204.

Hoover several times captured videorecordings and still images of A.P. masturbating.   J.A. 203–208.   He recorded videos and images of A.P.'s masturbating on the couch at Hoover's Wilkesboro, North Carolina home when A.P. was "about 16."   J.A. 132–38, J.A. 205–207. And Hoover recorded a video and images of A.P.'s masturbating in a hammock during a hike in Tennessee when A.P. was "probably around 17."   J.A. 148–150, J.A. 206–208.

Hoover also made sexual advances toward and sexually molested M.C., who was fourteen years old at the time of Hoover's trial.   J.A. 173.   Hoover first attempted sexual contact with M.C. in Hoover's daughter's bedroom, while Hoover's daughter was asleep.   J.A. 117. M.C. woke up to find Hoover between M.C. and his daughter. J.A. 178. Hoover "had his hand on his" own "penis," told M.C. to "look at it," and made an unwelcome attempt to place his hand under M.C.'s underwear to touch M.C.'s penis.   J.A. 178.   M.C. thwarted Hoover's efforts by asking Hoover to "please stop," rolling over, and holding his pants up.

4

J.A. 179.   Another time, when M.C. was alone with Hoover in Hoover's car, Hoover persuaded M.C. to show Hoover his penis in exchange for a "vape" device.   J.A. 180–81.   On a third occasion, outside, Hoover masturbated in front of M.C., pressured M.C. into exposing his penis after M.C. refused multiple times, and then "put his mouth on" M.C.'s penis for "[p]robably two or three minutes."   J.A. 182–84.   Hoover told M.C. that he wanted to see if M.C.'s penis "had got any bigger."   J.A. 182.

In August of 2019, while hiking in North Carolina, Hoover told M.C. "to start masturbating."   J.A. 119, 186–88.   M.C. told Hoover he "didn't really feel like doing it."   J.A. 188.   Hoover persisted, repeating the instruction multiple times.   J.A. 188.

M.C. eventually complied with Hoover's instruction, and Hoover used his iPhone to make a videorecording of M.C.'s masturbation.   J.A. 186–90.   After Hoover recorded the video, he showed it to M.C. and told M.C. that he would delete it, along with still images he had captured. J.A. 189–91.   Hoover told M.C. that M.C. could get in "big trouble" if he told anybody about what was happening.   J.A. 188.

5

**B.    Hoover's employer and police discover the videos after Hoover's arrest for exploiting other children.**

Hoover also molested or attempted to molest six other boys, Minor Victims 3–8.    J.A. 452–453.    Hoover touched 15-year-old Minor Victim 3's penis multiple times, and the penis of Minor Victim 4, multiple times.    J.A. 452.    Hoover touched Minor Victim 5's penis and exposed his own penis to the boy and his friend.    J.A. 452–53.

Hoover sexually molested Minor Victim 6 for several years, beginning when the boy was between the ages of 4 and 7.    J.A. 453. Hoover forced Minor Victim 6 to perform oral sex on Hoover and put his penis in Hoover's anus, among other things.    J.A. 453.

Hoover got on top of Minor Victim 7, unsuccessfully attempted to put his hand into the victim's pants, and stated that he wanted to perform oral sex on Minor Victim 7.    J.A. 453.    And Hoover felt Minor Victim 8's genitals multiple times and attempted to perform oral sex on the boy.    J.A. 453.

Police in North Carolina arrested Hoover based on information from some of these victims.    J.A. 450, 453.    He was charged with several state offenses.    J.A. 450, 453.

6

Hoover's arrest led to the discovery of the videos and other images Hoover had captured of A.P. and M.C. J.A. 450–51. They were on a phone issued by Hoover's employer, Wells Fargo bank, who turned the device over to police after discovering some of its contents. J.A. 72–91, J.A. 87–92, J.A. 100–172, J.A. 450–51.

### C. A jury convicts Hoover of child-pornography offenses.

A grand jury charged Hoover with two counts of production of child pornography, 18 U.S.C. § 2251(a); and one count of possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B). J.A. 10–11. The counts focused on the visual depictions Hoover had created of A.P. and M.C.

At trial, both A.P. and M.C. described Hoover's sexual conduct and efforts to persuade them to masturbate. J.A. 173–95, J.A. 195–212. In response to a motion in limine filed by the United States seeking the admission of this evidence under Federal Rules of Evidence 404(b) and 414, J.A. 13–30, the court ruled the evidence "intrinsic" to the photographs found on the phone with respect to A.P. J.A. 61, J.A. 336. And the court ruled that the evidence was both intrinsic and admissible

7

under Rule 414 with respect to M.C.   J.A. 61, J.A. 336.   Hoover did not

dispute the court's rulings.   But he unsuccessfully objected to the

evidence as irrelevant and unduly prejudicial under Federal Rule of

Evidence 403.   J.A. 62, J.A. 337; *Br. of Appellant* 3.   Hoover did not

seek a limiting instruction, *see* J.A. 5, J.A. 61–63, J.A. 217, J.A. 336–37,

or to sever the counts.

When M.C. testified about Hoover's conduct, the district court, on

its own initiative and without objection, gave the jury a limiting

instruction about evidence introduced under Federal Rule of Evidence

414.   J.A. 176–77.   The court concluded the detailed instruction by

stating "that the defendant is not on trial for any act, conduct, or

offense not charged in the indictment," J.A. 177, an instruction that the

court would later repeat at the close of evidence, J.A. 221.

The jury saw the video and images Hoover had captured of M.C.'s

and A.P.'s masturbating.   J.A. 114–150, J.A. 190–91, J.A. 205–208.

A.P. and M.C. described the videos and confirmed that they were the

individuals respectively depicted in them.   J.A. 173–95, J.A. 195–212.\

8

M.C. testified that Hoover had told M.C. that he would delete the video Hoover had captured of him, J.A. 185, but the jury learned that a copy of the video had been saved on Hoover's phone inside a "secret calculator" application "used to hide information, images, videos or files." J.A. 115–20, J.A. 190. The application looks like an ordinary calculator on a phone. J.A. 120. But when a user enters a code, it "opens the door and you can see the files that have been stored in that application." J.A. 120. The jury heard details from a forensic analysis of the contents of the phone, including the application, J.A. 115–20, but M.C. also testified that Hoover had showed him the photograph-hiding calculator. J.A. 185, J.A. 194. Hoover told M.C. that the photographs the application concealed were "bad pictures" that M.C. could not see "at the time." J.A. 185.

The jury heard Special Agent Anderson of the North Carolina State Bureau of Investigation testify about the results of his forensic examination of Hoover's iPhone using the Cellebrite forensic-examination software. J.A. 91–172. Agent Anderson described and showed the videos and pictures of M.C. and A.P. J.A. 114–150. He

9

also described finding terms used to search the internet on Hoover's iPhone.   J.A. 158–161.   The jury saw that a search "was conducted via Twitter" for "NAMBLA," an acronym for the "North American Man Boy Love Association."   J.A. 159.   Multiple searches for "selfies boy oh boy" were conducted in May of 2017.   J.A. 159.   Other search terms used were "selfies boy" and "selfies boy oh bot."   J.A. 160 (sic).   The jury also heard evidence of a search for "the term 'selfies boy masterbating.'" J.A. 160 (sic).   Although the United States informed Hoover before trial that it would seek to introduce evidence of these search terms, J.A. 15, J.A. 62–63, Hoover did not object to this evidence at that time, J.A. 62–63, or when the evidence was introduced, J.A. 157–161; *see also* J.A. 159 (objecting only to Agent Anderson's testimony about "what NAMBLA stands for").

The jury saw the iPhone, J.A 82, which was marked that it was "designed by Apple in California" and "assembled in China," J.A. 103. The jury also saw records supplied by Apple stating that the phone was manufactured in China and sent in March of 2017 to a store in Memphis, Tennessee.   J.A. 91, 103.

10

Hoover unsuccessfully moved for judgment of acquittal under Federal Rule of Criminal Procedure 29, raising specific grounds.   J.A. 213.   He contended that the jury had heard "no evidence" that Hoover had "used or employed or persuaded or induced or enticed or coerced the minor named in counts one or two, count one in this case, to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct . . . as to A.P."   J.A. 213.   Specifically, he contended that the jury did not "see any evidence" that "there was any affirmative act on the part of Mr. Hoover to get" A.P. to masturbate "for the purpose of taking that video."   J.A. 213.   The prosecutor responded that a "minor is used" under the statute "simply by being photographed or videoed," and pointed to evidence that Hoover "choose to pick up a camera, hit record, and zoom in on" A.P.'s "genitals repeatedly," allowing the jury to find that Hoover was "using the victim" to "create the child pornography."   J.A. 214.   The district court denied the motion.   J.A. 214.

The court instructed the jury, J.A. 261–276, and Hoover objected to part of the Court's instruction about the purpose element of the

11

production counts, J.A. 42, J.A. 217–18.   The court instructed that the
"government does not have to prove that the defendant's sole purpose or
the primary purpose of engaging in such conduct was to produce a
visual depiction."   J.A. 265.   The court also instructed that the United
States had to "prove that the minor engaged in the sexual activity and
that the defendant had the specific intent to produce a visual depiction."
J.A. 265.   "It is not sufficient," the court continued, "simply to prove
that the defendant purposefully took the picture.   The government
must prove that producing a visual depiction of sexually explicit
conduct was one of the defendant's purposes for using, employing,
persuading, enticing, or coercing the victim to engage in sexually
explicit conduct and that it was a significant or motivating purpose and
was not merely incidental to the sexually explicit conduct."   J.A. 265.

The jury found Hoover guilty of all three counts.   J.A. 280, J.A.
285.   It had deliberated for 25 minutes.   J.A. 279.

## D.   The district court sentences Hoover to 840 months' imprisonment.

The district court's probation office prepared a presentence report
determining the United States Sentencing Guidelines assigned Hoover

12

a total offense level of 43 and advised a sentence of 840 months'
imprisonment.   J.A. 465.   The report described Hoover's conduct
involving A.P. and M.C.   J.A. 450–452.   And it described as relevant
conduct Hoover's actions involving Minor Victims 3–8.   J.A. 452–453.

The report applied the Guidelines' grouping rules, U.S.S.G.
§ 3D1.2.   J.A. 454.   It assigned Hoover's production conviction on
count 2, involving M.C., and his possession conviction on count 3 to one
group.   J.A. 454.   And it assigned Hoover's production conviction on
count 1, involving A.P., to a second group.   J.A. 454, J.A. 456.

The report applied § 2G2.1 of the Guidelines and several
adjustments to Hoover's production convictions.   J.A. 454–56. The
report applied § 2G2.1(b)(2)(A), which calls for a two-offense-level
increase if the offense involved "the commission of a sexual act or sexual
contact."   J.A. 455.   And it applied § 2G2.1(b)(5), which adds two levels
if the defendant was "a parent, relative, or legal guardian of the minor
involved in the offense," or if "the minor was otherwise in the custody,
care, or supervisory control of the defendant."   J.A. 455.

13

The report calculated an initial offense level for Hoover's possession conviction using § 2G2.2 and several adjustments.   J.A. 455.   The report applied § 2G2.2(b)(5), which calls for a five-offense-level increase if "the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor."   J.A. 455.   And the report applied § 2G2.2(b)(6), which calls for an adjustment for use of a computer.   J.A. 455.

The report, however, did not use the offense level it initially calculated under § 2G2.2.   J.A. 455.   Instead, the report applied § 2G2.2(c)(1), a cross-reference provision that calls for the court to apply the child-pornography production guideline if it results in a greater offense level and the "offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction."   J.A. 455.

The report determined that § 2G2.2(c)(1)'s cross-reference provision determined Hoover's offense level for his possession offense. J.A. 455.   The cross-reference provision called for an offense level of

14

"38, which is greater than the offense level" the report had calculated under "§ 2G2.2" without the cross reference.    J.A. 455.

The report determined that Hoover's combined adjusted offense level was 40 in the light of its application of the grouping rules and determined that § 4B1.5(b)(1) called for a further five-offense-level adjustment.    J.A. 457.    Section 4B1.5(b)(1) applies when a qualifying defendant "engaged in a pattern of activity involving prohibited sexual conduct."    U.S.S.G. § 4B1.5(b)(1).    Although the application of adjustments resulted in an offense level of 45, the report assigned Hoover a total offense level of 43, the highest offense level that the Guidelines' sentencing table recognizes, U.S.S.G. Ch. 5, Pt. A & comment. (n.2).    J.A. 457.

Hoover filed twenty written objections to the Presentence Report, most of which consist of one-sentence conclusions.    J.A. 444–45. Hoover stated, for example, that he disputes the "Statement of Relevant conduct" because he had "pled Not Guilty."    J.A. 444.    He objected to the application of § 2G2.1(b)(2)(A), stating, "The defendant was not involved in the commission of a sexual act or sexual conduct."    J.A. 444.

15

He opposed § 2G2.1(b)(5), stating, "The defendant did not involve a minor in the offense, and the minor was not under the care, custody or control of the defendant." J.A. 444. Of § 2G2.2(b)(5), he said, "The defendant did not engage in a pattern o[f] sexual activity involving the sexual abuse or exploitation of a minor." J.A. 444. Of § 2G2.2(c)(1), Hoover stated that he "objects to the cross reference in Paragraph 43" of the report. J.A. 445. And, of § 4B1.5(b)(1), Hoover stated, "The defendant has not engaged in a pattern of activity involving prohibited sexual conduct, and is not a repeat and dangerous sex offender against minors." J.A. 445.

Hoover did not object to paragraph 29 of the Presentence Report, which applies the Guidelines' grouping rules under § 3D1.2(b), J.A 454. *See* J.A. 444. He did, however, object to the paragraphs applying the adjustment for multiple counts in different groups. J.A. 445 (identifying objections to paragraphs 56, 57, and 58). His objection to each of those paragraphs states only that the objection is "based on prior objections." J.A. 445.

16

Hoover filed a sentencing memorandum, which sought a
downward variance from the 840-month sentence the Sentencing
Guidelines advised for three reasons.   J.A. 286–294.   First, he argued
that a variance was warranted because the child-pornography
sentencing guidelines are "overly harsh."   J.A. 288.   Second, he argued
that his history and characteristics — including his service in the Navy
and "gainful employment" as "vice president at Wells Fargo" — further
justified a variance.   J.A. 291–92.   Third, he argued that the guideline
range "far exceeds what is necessary to afford adequate deterrence to
criminal conduct and to protect the public," citing an evaluation by
forensic psychologists he paid for "at his own expense" placing him in
the "medium-risk range" for "future violence."   J.A. 293–94
(capitalization altered).

At sentencing, Hoover told the court that he did not "need to be
heard" on his objections to the presentence report.   J.A. 297.   The
court sustained an objection to the two-offense-level enhancement
under § 2G2.2(b)(6) for use of a computer, which the probation office
had applied when calculating Hoover's initial offense level under the

17

possession guideline.    J.A. 297.    Because the probation office had

discarded that initial offense level and instead used the offense level

called for by § 2G2.2(c)(1)'s cross-reference, J.A. 455, the court's ruling

did not affect the determination that Hoover's total offense level was 45,

"to be treated as an offense level of 43" at the direction of the

Sentencing Commission, J.A. 457; U.S.S.G. Ch. 5 Pt. A, comment (n.2).

The court otherwise overruled Hoover's objections and "adopt[ed] the

information in the presentence report without change."    J.A. 298, J.A.

485.

After the court found that the Guidelines advised a sentence of

840 months, Hoover reiterated his request for a downward variance.

J.A. 299–300.    The court also heard at sentencing from the United

States, from A.P., from M.C.'s mother, and from the father of three of

Hoover's other child victims.    J.A. 300–313.    Asked directly if he would

like to address the Court, Hoover said, "No sir.    I'm good."    J.A. 300.

The court sentenced Hoover to a term of imprisonment of 840

months, the term the Guidelines advised, and explained its sentence.

J.A. 315–16.    "[O]ver the course of many years with at least eight

victims," said the court addressing Hoover, "you demonstrated that you were a child predator, victimizing them not only then but for the rest of their lives, as we've heard."   J.A. 314.   "[A]t trial," continued the court, "watching those young men have to sit there and watch a jury watch them watch a video of them masturbating, was painful to see."   J.A. 314–15.

The court explicitly "considered" Hoover's "attorney's request for a variance."   J.A. 314.   It addressed each of the three arguments Hoover had made.   J.A. 314–15.

The court addressed Hoover's "argu[ment] that the sentencing guidelines for these kind of cases are overly harsh" and explained that it disagreed.   J.A. 314.   It explained that it "underst[ood] the legal arguments."   J.A. 314.   But it stated that the court was "fully satisfied with the way the guidelines are right now."   J.A. 314.   The court explained that when it spoke to others "about child pornography" and "child abuse," they "don't think any sentence is too long."   J.A. 314.   The court explained that it did not "know what the sentencing commission might do in the future with some of these things."   J.A.

19

314.  But its "guess [was] that the public is unconcerned with the harshness of these guidelines."  J.A. 314.  "[T]he Court," it said, "is unconcerned as well."  J.A. 314.

The court addressed Hoover's argument about Hoover's "history and characteristics."  J.A. 314.  It noted some of Hoover's history and characteristics "are good."  J.A. 314.  "Your navy service is much appreciated," the court told Hoover.  J.A. 314.  And it considered the possibility that he "may suffer from PTSD from Desert Storm," though the court noted that Hoover "seemed to function awfully well at work for an awfully long time."  J.A. 314.  The court explained that Hoover's history, including that possible condition, "seems an insufficient reason to vary downward."  J.A. 314.

Finally, the court addressed Hoover's argument based on the findings of the psychologists he hired.  J.A. 315.  Discussing the risk category in which the psychologists placed Hoover, the court said "Medium risk is a significant risk to [the] Court.  I don't care which end of it you are."  J.A. 315.  "I have no reason to believe that you wouldn't be a recidivist if given the chance," the court continued.  J.A. 315.  The

20

court also explained that the psychologist had "made note of" Hoover's "total lack of acceptance of responsibility for these offenses." J.A. 315. Hoover had "even minimized them." J.A. 315.

The court explained that it would not "vary downward for mere appearance sake" to prove to this Court that it was aware of its authority to vary downward and had taken some of Hoover's "arguments into account." J.A. 315. The court explained that if it had done so, it would still "impose a sentence that" it was "satisfied would make sure" Hoover "never saw the light of day." J.A. 315. But the court stated it would not "play a game of trying to appear that [it] didn't think a guideline sentence was appropriate." J.A. 315.

The court said it would "stick with the guidelines." J.A. 315. "I think that's the appropriate sentence," said the court. J.A. 315. The court explained that it "considered all of the factors" in 18 U.S.C. § "3553(a)." J.A. 315–16. And it sentenced Hoover to a "total term of 840 months." J.A. 316.

21

## SUMMARY OF THE ARGUMENT

I.    The district court acted within its discretion and did not
plainly err when admitting evidence of search terms Hoover used and
his victims' testimony about Hoover's conduct before Hoover recorded
them.   The terms Hoover used, including searches for "NAMBLA" and
for visual depictions of boys masturbating, were highly relevant to
whether creating a visual depiction was a motivating purpose for his
conduct with A.P. and M.C. and whether he possessed his child
pornography knowingly.   Federal Rule of Evidence 404(b) does not bar
the evidence because it is intrinsic to the charged offense — the search
terms were located alongside the child pornography Hoover created on
the same phone during the same forensic examination, they involve the
same subject matter, and they speak directly to Hoover's intent.   And
the rule would not bar the evidence in any event because the rule
permits evidence to prove Hoover's intent and motive.   The court also
properly allowed A.P. and M.C. to testify about Hoover's sexual
advances.   The rules of evidence permitted the testimony, and the
premises of Hoover's arguments — that the district court applied Rule

22

414 to A.P.'s testimony and that M.C.'s testimony was not admissible against A.P. — are incorrect.

II.    Sufficient evidence supports the jury's guilty verdict.  The nature of the images and videos Hoover captured, his use of a secret-calculator tool to store them, his separate efforts to search for visual depictions of boys masturbating, and the fact that he made multiple visual depictions of multiple victims engaged in the same kind of sexual conduct on multiple occasions amply supports the jury's finding that making a visual depiction was a motivating purpose behind Hoover's use and persuasion of the boys.   And that he used an iPhone imported from China fully supports the jury's finding that each of his offenses has a proper nexus to interstate commerce.

III.    The district court properly instructed Hoover's jury about the purpose element of Hoover's production charges.   This Court has held that the purpose element is one of specific intent requiring proof that producing a visual depiction was a significant or motivating purpose of Hoover's use or persuasion of his victims to engage in sexually explicit conduct.   The district court appropriately instructed

23

the jury "the defendant had the specific intent to produce a visual depiction" and that producing a visual depiction "was a significant or motivating purpose and was not merely incidental to the sexually explicit conduct."

IV.    The district court did not procedurally err, plainly or otherwise, when imposing Hoover's 840-month prison sentence for his sexual exploitation of multiple children.   The court properly applied the Sentencing Guidelines' grouping rules by placing Hoover's production counts, which focused on different victims, in different groups.   The court properly added two offense levels under § 2G2.1(b)(2)(A) of the Guidelines because what Hoover did to A.P., M.C., and Hoover's numerous other victims involved a sexual act or contact.   The court properly added two levels under § 2G2.1(b)(5) because Hoover was both a relative of and had custody, care, or supervisory control of minors involved in the offense.   The court properly evaluated § 2G2.2(b)(5) because Hoover's conduct with A.P. and several of his other minor victims alone establishes a pattern of activity involving the sexual abuse or exploitation of a minor, although

24

that section had no effect on Hoover's offense level.   The court properly applied § 2G2.2(c)(1)'s cross reference because Hoover caused or permitted A.P. and M.C. to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.   And the court properly applied § 4B1.5(b)(1) because Hoover's conduct includes a pattern of activity involving prohibited sexual conduct.

After correctly calculating the guidelines, the district court appropriately explained its sentence, considering and addressing each of Hoover's arguments for a variance and explaining why it rejected them.   The district court properly sentenced Hoover to 840 months' imprisonment for his sexual exploitation of children.

## ARGUMENT

**I.    The district court acted within its discretion and did not plainly err when admitting evidence of search terms Hoover used and his victims' testimony about Hoover's conduct before he recorded them.**

### A.    Standard of Review

This Court ordinarily reviews a district court's decision to admit evidence "for an abuse of discretion" when the issue is properly preserved.   *United States v. Farrell*, 921 F.3d 116, 143 (4th Cir. 2019).

25

Under that standard, this Court "will only overturn a ruling that is arbitrary and irrational." *Id.*

Hoover, however, failed to preserve the evidentiary and jury-instruction arguments he presses on appeal by first presenting them to the district court. Hoover did not object at trial to evidence "detailing Appellant's web history of internet searches" on any ground, *Br. of Appellant* 26; *see* J.A. 62–63, J.A. 157–161, let alone the "specific ground[s]" he now asserts on appeal. Fed. R. Evid. 103(a)(1)(B); *see United States v. Zayyad*, 741 F.3d 458–59 (4th Cir. 2014). And Hoover challenged the admission of A.P.'s and M.C.'s testimony before the district court only on grounds of relevance and unfair prejudice under Rule 403, J.A. 61–63, J.A. 337, grounds he does not repeat on appeal, *Br. of Appellant* 29–30. Hoover did not contend below that the court misapplied Federal Rule of Evidence 414, seek the limiting instructions he proposes on appeal, or ask the district court to sever the counts for separate trials. *Br. of Appellant* 28–30.

Because Hoover did not preserve these arguments, this Court considers them under the plain-error standard of review. *United*

26

*States v. Davis*, 855 F.3d 587, 595 (4th Cir. 2017); *United States v.
Keita*, 742 F.3d 184, 189 (4th Cir. 2014).   That standard requires
Hoover to prove that "(1) there is in fact an error; (2) the error is clear
or obvious, rather than subject to reasonable dispute; (3) the error
affected the appellant's substantial rights, which in the ordinary case
means it affected the outcome of the district court proceedings; and (4)
the error seriously affects the fairness, integrity, or public reputation of
judicial proceedings." *Davis*, 855 F.3d at 595.

Hoover's assertion in footnote 2 of his brief that the district court
should have severed the counts for separate trials is not subject to
appellate review at all, for two reasons.   First, Hoover waived any
severance argument because he did not move for "severance of charges"
before trial and has not attempted before the district court or this Court
to demonstrate "good cause."   Fed. R. Crim. P. 12(b)(3)(D), (c)(3);
*United States v. Ferguson*, 778 F.2d 1017, 1020 (4th Cir. 1985).
Second, this court ordinarily does not consider arguments, like
Hoover's, "made solely in a footnote."   *United States v. Arbaugh*, 951
F.3d 167, 174 n.2 (4th Cir. 2020).

27

**B.    Discussion**

The district court acted within its discretion and did not commit any plain error in its evidentiary rulings during Hoover's trial.   The court properly admitted, without objection, evidence of searches Hoover conducted on his phone.   And the court properly admitted the testimony of A.P. and M.C. about Hoover's conduct in advance of his production of child pornography.

**1.    The district court properly admitted, without objection, evidence of searches Hoover conducted on his phone.**

The district court properly admitted testimony of search terms Hoover used on his phone.   *Cf. Br. of Appellant* 26–29.   The jury heard evidence that Hoover had searched for "selfies boy oh boy" in May of 2017, J.A. 159, and that he had conducted similar searches for "selfies boy" and "selfies boy oh bot," J.A. 160.   The jury also heard that Hoover had searched for "NAMBLA" and "selfies boy masterbating."   J.A. 159–60.

Hoover' searches are relevant to and highly probative of the intent elements of Hoover's offenses.   The production counts required the

28

United States to "prove that production of a visual depiction was a purpose" for which Hoover sought to persuade or use his victims to engage in sexually explicit conduct. *United States v. Palomino-Coronado*, 805 F.3d 127, 130–31 (4th Cir. 2015); J.A. 265. The search terms were strong evidence that Hoover's focus was on *visual depictions* of boys engaged in the kind of sexual conduct that he recorded before he began making the recordings. And the possession count required proof that Hoover "had knowledge of the sexually explicit nature of the materials as well as the involvement of minors in the materials' production." *United States v. Miltier*, 882 F.3d 81, 86 (4th Cir. 2018). The searches reveal an effort to find "sexually explicit" content with the "involvement of minors," *id.*, and are strong evidence that Hoover's possession of child pornography was knowing. *Id.* at 87 (holding that "search terms indicative of child pornography" helped support guilty verdict for possession of child pornography). Hoover does not dispute the relevance of the search terms. *Br. of Appellant* 26.

Although Hoover does not cite the rule in the argument section of his brief, *see Br. of Appellant* vi, he appears to contend that Federal

29

Rule of Evidence 404(b) barred the admission of this evidence. That rule imposes a narrow limitation on the use of evidence of an "other crime, wrong, or act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). The rule did not deprive the district court of discretion to admit evidence of the searches, for at least two reasons.

First, Rule 404(b) applies only to "acts 'other' than those at issue in the case," *id.* & advisory committee's note to 2020 amendments, and the district court properly held — without objection — that the searches were instead "intrinsic" to the charged crimes, J.A. 63. Other acts are "intrinsic" when "they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Bush*, 944 F.3d 189, 196 (4th Cir. 2019). Evidence is "inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's account of the circumstances surrounding the offenses for which the defendant was indicted." *Id.* "[E]vidence is"

30

also "intrinsic when it serves to complete the story of the crime on trial."
*Id.* (cleaned up).   Evidence is "extrinsic," and therefore subject to Rule
404(b)'s limitations, in contrast, when it is "'separate' from or
'unrelated' to the charged offense."   *Id.* (citation omitted).

The district court acted within its broad discretion when it found
the searches "intrinsic."   The search-term evidence was inextricably
intertwined with evidence of the visual depictions Hoover was charged
with producing and possessing.   The search terms were located by the
same witness during the same forensic search of the same phone that
Hoover used to produce and possess the child pornography.   *See United
States v. Rodriguez*, No. 21-10355, 2022 WL 1788818, at *3 (11th Cir.
June 2, 2022) (unpublished decision).   The images and search terms
involve practically the same subject matter.   And the searches speak
directly to Hoover's intent with respect to the charged visual depictions.
The search-term evidence was a natural part of Special Agent
Anderson's testimony about what he found accompanying the charged
images, reflected necessary preliminaries of the videos Hoover made,
and served to complete the story of the crime.   *Bush*, 944 F.3d at 196.

31

Hoover has not identified any way in which the court's "decision was guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Id.* at 195.

Hoover's contention that the searches were "too remote in time" to qualify as intrinsic, *Br. of Appellant*, misses the mark. The jury heard that Apple imported the iPhone into the United States in March of 2017. J.A. 103. To the extent the searches were "undated," the jury could reasonably conclude that they were conducted no more than a year-and-a-half before the charged June 2018 events involving A.P. and two-and-a-half years before the August 2019 events involving M.C., J.A. 10–11. The searches and the videos, moreover, share a close temporal connection because they were discovered at the same time on the same phone by the same witness conducting a forensic examination of the instrument Hoover used to capture the charged visual depictions. *Cf. United States v. Sebolt*, 554 F. App'x 200, 202 (4th Cir. 2014) (unpublished decision) (holding that greeting cards sent to and from defendant in 2008 were not intrinsic to 2010 charged offense of advertising child pornography). The timing of the searches may relate

32

to the weight the jury might give the evidence, but it does not render the evidence recovered from the same device "'separate' from or 'unrelated' to the charged offense." *Bush*, 944 F.3d at 196.

Also misplaced is Hoover's contention that if the evidence was intrinsic to Hoover's production offenses, it was "not intrinsic to the possession charge." *Br. of Appellant* 28–29.   The search-term evidence was found on the same device on which Hoover kept the child-pornography video and images he possessed.   *Cf. Rodriguez*, 2022 WL 1788818, at *3.   And the child pornography he possessed is the same child pornography he produced by exploiting A.P. and M.C.   J.A. 241–42.   The district court acted firmly within its discretion when it held the evidence intrinsic to each of the charged offenses.

Even if the search-term evidence were not intrinsic, Rule 404(b) would permit its admission.   The rule "is an inclusionary rule" that "allow[s] evidence of other crimes or acts to be admitted, except that which tends to prove *only* criminal disposition."   *United States v. Ebert*, 61 F.4th 394, 404 (4th Cir. 2023).   The rule permits evidence of other crimes, wrongs, or acts when introduced for "another purpose, such as

33

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

The court properly admitted the search-term evidence "because it was relevant for several purposes, including establishing the absence of mistake or accident as well as showing [Hoover's] intent in pursuing photographs of minors for personal sexual arousal." *Ebert*, 61 F.4th at 403–04. The evidence is also "necessary in the sense that it is probative of an essential claim or an element of the offense," *United States v. Bell*, 901 F.3d 455, 465 (4th Cir. 2018); the search terms are highly probative of the intent elements of Hoover's offenses. The evidence was "reliable," presented by an uncontested expert witness, J.A. 98, who conducted the forensic analysis of Hoover's phone. *Bell*, 901 F.3d at 465. And the probative value of the evidence was not "substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process." *Id.* Hoover does not identify any way in which the evidence fails to meet these criteria that guide admission under Rule 404(b). *Id.*

Finally, if the district court should have limited the admission of the search-term evidence on its own initiative, the court's omission to do so would not amount to a plain error.   An error is plain only if "(1) the explicit language of a statute or rule resolves the question or (2) at the time of appellate consideration, the settled law of the Supreme Court or this Court establishes that an error has occurred." *Davis*, 855 F.3d at 595–96.   The two unpublished decisions Hoover cites reject defense challenges to the admissibility of evidence, *Rodriguez*, 2022 WL 1788818, at *3, *Sebolt*, 554 F. App'x at 202, and do not come close to establishing that an error occurred.   Nor do unpublished decisions qualify as "established law." *Davis*, 855 F.3d at 595–96.

Even if Hoover could somehow establish a "clear or obvious" error, he cannot establish that it affected his "substantial rights." *Id.*   The other evidence of Hoover's crimes is overwhelming.   The two victims of Hoover's charged child-pornography production and possession offenses testified and described for the jury how he made unwelcome sexual advances and sought to persuade them to engage in sexual activity before using them to make child pornography.   And a forensic

35

examination of Hoover's phone corroborated this already powerful evidence.   No "reasonable probability" exists that, if the court had limited the admission of the search-term evidence — or given a different limiting instruction, *cf. Br. of Appellant* 29 — "the outcome of the proceeding would have been different."   *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021).   The court indeed instructed the jury repeatedly that Hoover was "not on trial for any act, conduct, or offense not charged in the indictment," J.A. 176–177, J.A. 221, and the jury still promptly found Hoover guilty of all counts.

Nor can Hoover establish an error that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Davis, 855 F.3d at 595.   To the contrary, "[t]his Court can be confident that Hoover received a "fair and reliable determination of guilt" because "the evidence adduced at trial points inexorably to the conclusion" that Hoover committed the crimes he was charged with.   *United States v. Hastings*, 134 F.3d 235, 243 (4th Cir. 1998); *see also United States v. Muslim*, 944 F.3d 154, 165 (4th Cir. 2019).

**2.    The district court properly allowed A.P. and M.C. to testify about Hoover's sexual advances and conduct before Hoover recorded these victims.**

The district court also did not act arbitrarily or irrationally when it allowed A.P. and M.C. to testify about Hoover's sexual advances and conduct toward them before Hoover captured videos of the victims' sexual conduct.   *Cf. Br. of Appellant* 29–30.   The evidence was relevant to and highly probative of Hoover's purpose in making the videos; his intentional employment, use, persuasion, inducement, enticement, and coercion of his victims; and his intentional possession of the child pornography he created.   Hoover does not contend otherwise.   *Br. of Appellant* 29–30.   Hoover instead alleges two errors related to this evidence for the first time on appeal, both of which are based on incorrect premises.

Hoover's first contention — that the district court "erred in allowing A.P.'s testimony" under Federal Rule of Evidence 414, *Br. of Appellant* 29–30 — is misplaced because the district court did not admit A.P.'s testimony under that rule.   *Br. of Appellant* 29–30.   The rule applies to evidence of "child molestation" involving a victim "below the

37

age of 14." Fed. R. Evid. 414(d)(1). And the United States made clear that it did *not* seek to introduce A.P.'s testimony under that rule "because he was over the age of 14" at the time of the conduct about which he testified. J.A. 335. The district court made equally clear that it was not relying on Rule 414 when it held A.P.'s testimony admissible. J.A. 61, J.A. 336.

The court held instead that A.P.'s testimony about Hoover's earlier conduct was "intrinsic" to the charged offenses. J.A. 61, J.A. 336. That ruling was well within the district court's discretion because Hoover's sexual advances and efforts to persuade A.P. to engage in the kind of sexual activity that he later filmed readily qualify as part of the same "criminal episode," "necessary preliminaries to the crime charged," an "integral and natural part of the witness's account of the circumstances surrounding the offenses," and evidence that "serves to complete the story of the crime on trial." *Bush*, 944 F.3d at 196. Hoover, again, does not contend otherwise. *Br. of Appellant* 29–30. His brief identifies no error in the district court's admission of A.P.'s testimony.

38

Hoover's second argument — that the district court erred by omitting to "provide a limiting instruction" when permitting M.C.'s testimony under Rule 414, *Br. of Appellant* 30 — is similarly baseless. The court *did* give a limiting instruction tailored to Rule 414 before permitting M.C. to testify about conduct admitted under that rule. J.A. 176.

Hoover cites nothing in support of his contention that the court should have "instruct[ed] the jury that such evidence was not to be considered as to the § 2251(a) charge involving A.P." *Br. of Appellant* 30. Hoover's molestation of M.C. was admissible against Hoover with respect to all charges, including those involving only A.P., because all of Hoover's charges were for "offenses prohibited by 18 U.S.C. chapter 110," Fed. R. Evid. 414(d)(2)(B). *See* 18 U.S.C. §§ 2251, 2252A; *cf. Br. of Appellant* 30. In a trial on such charges, Rule 414 authorizes the admission of "evidence that the defendant committed *any other* child molestation." Fed. R. Evid. 414(a) (emphasis added). The rule is not limited to prior acts involving the same victim. *See id.*; *United States v. Mason*, 532 F. App'x 432, 437 (4th Cir. 2013) (unpublished decision);

39

*United States v. Stamper*, 106 F. App'x 833, 834 (4th Cir. 2004)

(unpublished decision).

Because the jury was entitled to consider M.C.'s testimony "on any matter to which it [was] relevant," Fed. R. Evid. 414(a), the district court was not required to instruct the jury not to consider it with respect to charges involving A.P.   Hoover's footnote suggesting that the court should have severed his counts for separate trials, *Br. of Appellant* 30 & n.2, would fail for the same reason if the suggestion were not waived, *see* Argument § I.A., *supra*.   *See United States v. Cardwell*, 433 F.3d 378, 388 (4th Cir. 2005) (explaining that a district court ordinarily "should grant a severance under Rule 14 *only* if there is a serious risk that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence" (cleaned up)).

Hoover has not identified any error in the admission of A.P.'s or M.C.'s testimony.   And he has not come close to identifying an error that qualifies as plain or obvious, that affects his substantial rights, or that seriously affects the fairness, integrity, or reputation of judicial proceedings.

40

## II.     Sufficient evidence supports Hoover's convictions.

### A.     Standard of Review

When a defendant preserves a challenge to the sufficiency of the evidence, this Court is "obliged to sustain a guilty verdict if, viewing the evidence in the light most favorable to the Government, it is supported by 'substantial evidence.'"  *United States v. Allere*, 430 F.3d 681, 692 (4th Cir. 2005) (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).   "Substantial evidence" is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.*   "[T]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented."  *Alerre*, 430 F.3d at 693.

Hoover, however, did not preserve the grounds for challenging the sufficiency of the evidence that he presents on appeal.   "When a defendant raises specific grounds in a Rule 29 motion, grounds that are *not* specifically raised are waived on appeal."   *United States v. Chong Lam*, 677 F.3d 190, 200 (4th Cir. 2012) (emphasis in original).   Hoover

41

contended that the evidence was insufficient to establish the "act" element of the production count "as to A.P." J.A. 213. He "waived on appeal," *Chong Lam*, 677 F.3d at 34, his contention that the evidence was insufficient to establish the "intent" element of the production counts with respect to "either M.C. or A.P." and his contention that the evidence was insufficient to support the jury's finding of the interstate-commerce elements of his production and possession charges, *Br. of Appellant* 34–35. This Court has recently held that arguments this Court described as "waived" in *Chong Lam* remain subject to appellate review under the plain-error standard. *United States v. Duroseau*, 26 F.4th 674, 678 & n.2 (4th Cir. 2022).

## B.  Discussion

Sufficient evidence supports the jury's guilty verdict. *Cf. Br. of Appellant* 30–35. Sufficient evidence establishes Hoover's guilt of his child-pornography-production counts. And sufficient evidence establishes his guilt of his child-pornography possession charges.

Hoover's production offenses, charged in counts one and two, have three elements. *United States v. Engle*, 676 F.3d 405, 412 (4th Cir.

42

2012).   The United States must prove that (1) the defendant knowingly employed, used, persuaded, induced, enticed, or coerced a person under the age of 18 "(2) to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct."   *Id.*; 18 U.S.C. § 2251(a).   And it must prove (3) an interstate-commerce element, which can be established by proof that the "visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer."   18 U.S.C. § 2251(a).

Hoover's child-pornography-possession offense, charged in count 3, also has three elements.   18 U.S.C. § 2252A(a)(5)(B).   First, the United States must prove that the defendant knowingly possessed material that contained an image of child pornography.   *Id.*   Second, the United States must prove that the defendant knew the material contained child pornography.   *Id.*   Third, the United States must prove an interstate-commerce element, which can be established with proof that the material "was produced using materials that have been mailed, or

43

shipped or transported in or affecting interstate or foreign commerce by any means, including by computer." *Id.*

The evidence the jury heard, including from the victims themselves, that Hoover persuaded two minor victims to masturbate and then recorded and stored still and video images of them doing so on an imported iPhone well supports the jury's verdict on each of Hoover's charges. Hoover contends on appeal that the evidence was insufficient only with respect to the purpose element of his production charges, *Br. of Appellant* 30–34, and the interstate-commerce elements of both his production and possession charges, *id.* at 34–35. These challenges are without merit.

Evidence before the jury well supports its finding that Hoover used and persuaded A.P. and M.C. to engage in sexually explicit activity "for the purpose of producing a visual depiction of that conduct," *Engle*, 676 F.3d at 412. Although producing a visual depiction must be "one of the defendant's motivating purposes" in using or persuading the victim to engage in sexual conduct, "the government need not prove the defendant's 'sole' purpose in the sexual encounter was to produce a

44

visual depiction." *United States v. McCauley*, 983 F.3d 690, 697 (4th Cir. 2020). The "purpose" element distinguishes sexual conduct procured with visual recording as a significant motivation from "a spontaneous decision to create a visual depiction in the middle of sexual activity without some sufficient pause or other evidence to demonstrate that the production of child pornography was at least a significant purpose." *Id.*

The evidence the jury heard readily supports its finding that producing a visual depiction was one of Hoover's motivating purposes when persuading and using A.P. and M.C. to engage in sexual conduct. Hoover captured multiple images, still and video, of each boy, and even "[z]oomed in" to "get closer" images of A.P.'s "exposed penis and then his face," J.A. 136. *McCauley*, 983 F.3d at 697 (explaining that "the image itself can be probative of intent"). Hoover kept a secret calculator on his phone for safe keeping of "bad pictures" he created, J.A. 185, moreover, providing a strong indication that his creation of the images was not a "spontaneous decision." *McCauley*, 983 F.3d at 696–97. The jury also heard that Hoover had searched for visual depictions of

45

boys masturbating, J.A. 160, had captured images and videos of both

A.P. and M.C. engaged in that same conduct, and had recorded A.P.

engaged in the same conduct on multiple occasions.    J.A. 132–138, J.A.

148–150, J.A. 203–08.    This conduct is strong evidence that "obtaining

the sexually explicit image[s] was itself important" to Hoover.

*McCauley*, 983 F.3d at 695–96 (quoting *United States v. Torres*, 894

F.3d 305, 312–13 (4th Cir. 2020)); *see also United States v. Palomino-*

*Coronado*, 805 F.3d 127, 132 (4th Cir. 2015) (identifying evidence that

the defendant taped sexual encounters with a minor more than once

probative of purpose).    The evidence well permitted the jury to find

beyond a reasonable doubt that creating visual depictions was "at least

a significant purpose" for Hoover's use and persuasion of the boys.

*McCauley*, 983 F.3d at 696–97.

The evidence also well supports the jury's finding of the

interstate-commerce elements of Hoover's production and possession

charges.    The jury heard that Hoover created child pornography and

stored it using an iPhone made in and imported from China and

marked "assembled in China," J.A. 103.    The jury could easily find

46

from this evidence that Hoover's visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce.    18 U.S.C. §§ 2251(a), 2252A(a)(5)(B); *United States v. Miltier*, 882 F.3d 81, 94 (4th Cir. 2018) ("[I]t is well settled that the interstate nexus requirement can be satisfied by a computer or hard drive that had been shipped or transported in interstate and foreign commerce.").

Hoover's contention that content produced using a cell phone is not produced "using *materials*," *Br. of Appellant* 4, is a non-sequitur. An iPhone is a "material thing" no less than a standalone camera, computer equipment, or anything else that might logically be used to produce child pornography.    *Oxford English Dictionary* (Online 3d ed. 2001) (s.v. "Material," sense B.1.a).    It readily qualifies even under Hoover's proposed definition, because the "substances of which" Hoover's iPhone "is composed" were used in producing the visual depictions.    *Cf. Br. of Appellant* 34.    In any event, "well settled" precedent, *Miltier*, 882 F.3d at 94, forecloses Hoover's theory that evidence that the producing "device" traveled across state lines does not

47

suffice to establish the interstate-commerce elements of the production and distribution statutes, *Br. of Appellant* 34.

The district court properly allowed the jury to reach its verdict, and Hoover cannot come close to establishing a plain or obvious error on the theories he presents for the first time on appeal. No "settled law of the Supreme Court or this Court establishes" that the kind of evidence the jury saw is insufficient to establish the purpose element of Hoover's production charges. *Davis*, 855 F.3d at 595–96. And the "settled law" forecloses Hoover's unusual interstate-commerce theory. *Id.*

## III. The district court properly instructed the jury about 18 U.S.C. § 2251(a)(1)'s purpose element.

### A.    Standard of Review

This court reviews "a district court's decision to give a particular jury instruction for abuse of discretion" and whether "a jury instruction incorrectly stated the law de novo." *United States v. McCauley*, 983 F.3d 690, 694 (4th Cir. 2020). The standard requires examination of "the jury instruction 'in light of the whole record,' to determine whether it 'adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the

48

objecting party.'" *Id.* (citations omitted).    An erroneous instruction does not require reversal of the jury's verdict "unless the erroneous instruction *seriously* prejudiced the challenging party's case."    *Id.*

**B.    Discussion**

The district court properly instructed the jury on "section 2251(a)'s purpose element."    *Cf. Br. of Appellant* 35.    The statute requires proof that the defendant used or persuaded a minor to engage in sexually explicit conduct "[f]or the purpose of producing any visual depiction of such conduct."    18 U.S.C. § 2251(a).    This Court has described the element as one of "specific intent."    *McCauley*, 983 F.3d at 697.    And it has approved an instruction "requiring that the purpose of filming be 'a significant or motivating purpose.'"    *Id.* (quoting *United States v. Thompson*, 807 F. App'x 251, 252 (4th Cir. 2020)).

The district court appropriately instructed the jury that the United States had to prove that "the defendant had the specific intent to produce a visual depiction" and that producing a visual depiction "was a significant or motivating purpose and was not merely incidental to the sexually explicit conduct."    J.A. 265.    This instruction, which

49

uses practically the same language this Court has used or endorsed to describe the element, "adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *McCauley*, 983 F.3d at 695.

Hoover does not identify on appeal any part of the instruction that was erroneous. He contends only that the court erred "by varying from the approved language *Palomino-Coronado*." *Br. of Appellant* 35 (sic). This Court's decision in *United States v. Palomino-Coronado*, however, does not require a specific jury instruction. 805 F.3d 127, 133 (4th Cir. 2015). The decision involved a challenge to the sufficiency of the evidence. *Id.* at 130. And it held that "§ 2251(a) contains a specific intent element: the government was required to prove that that production of a visual depiction was a purpose" of Palomino-Coronado's "engaging in the sexually explicit conduct" with a minor. *Id.* at 130. The district court's instruction to Hoover's jury is consistent with this holding. And this Court has endorsed the use of different "variation[s]" of the purpose element in jury instructions, including variations that match the instructions the district court gave in Hoover's case.

50

*McCauley*, 983 F.3d at 697–98.   In any event, Hoover has not identified any way in which the instruction "*seriously* prejudiced" Hoover's "case." *Id.*

## IV.  The district court properly sentenced Hoover to 840 months in prison for his child-exploitation offenses.

### A.   Standard of Review

When objections to the procedural reasonableness of a sentence are properly preserved, this Court ordinarily reviews "the district court's factual findings for clear error and its legal conclusions de novo," *United States v. Pena*, 952 F.3d 503, 507 (4th Cir. 2020), and it reviews the district court's explanation of its sentence for "abuse of discretion," *United States v. Lynn*, 592 F.3d 572, 584 (4th Cir. 2010).   To preserve a claim of error, a party before the district court must inform that court of both "the party's objection to the court's action" and "the grounds for that objection."   Fed. R. Crim. P. 51(b).   The party must object with a "reasonable degree of specificity" sufficient to apprise "the trial court of" the objection's "true basis."   *United States v. Bennett*, 698 F.3d 194, 200 (4th Cir. 2012).   "[L]odging one specific claim of procedural sentencing error before the district court does not preserve for appeal a different

51

claim of procedural sentencing error." *Lynn*, 592 F.3d at 579 n.4. Issues not preserved under these standards but raised on appeal are reviewed for plain error. *Bennett*, 698 F.3d at 200; *United States v. Fowler*, 58 F.4th 142, 150 (4th Cir. 2023).

**B.    Discussion**

The district court properly sentenced Hoover to 840 months' imprisonment.   The court properly determined Hoover's advisory guideline range.   *Cf. Br. of Appellant* 36–41.   And the district court acted within its discretion when explaining Hoover's sentence.   *Cf. Br. of Appellant* 41.

**1.    The district court properly determined Hoover's advisory guideline range.**

The district court properly determined that the Sentencing Guidelines advised a prison sentence of 840 months.   Hoover contends that the district court misapplied six different provisions of the Guidelines.   *Br. of Appellant* 36–40.   This section addresses each contention in turn.   But it first discusses two features of this appeal relevant to several of these contentions.

52

First, the district court acted within its discretion when it adopted "the information in the presentence report without change." J.A. 298, J.A. 485. A district court is entitled to adopt information in the presentence report as a finding of fact unless the "defendant" complies with his "affirmative duty to make a showing that the information in the presentence report is unreliable, and articulate the reasons why facts contained therein are untrue or inaccurate." *Fowler*, 58 F.4th at 151. Hoover did not meet this burden or seriously attempt to do so, *see* J.A. 444–45, and the court was within its prerogative to adopt the information in the report "as a finding of fact." *Id.* at 152.

Second, five of the six errors Hoover alleges would not alone require reversal, even if this Court found that Hoover established a plain error. The court's application of enhancements and grouping rules resulted in a total offense level of 45, and the Guidelines treat any offense level of 43 or above "as an offense level of 43." J.A. 457; U.S.S.G. Ch. 5 Pt. A, comment (n.2). Any error or combination of errors involving two or fewer offense levels would therefore be harmless because Hoover's Guidelines range would not change. *United States v.*

53

*Beasley*, 824 F. App'x 154, 158 (4th Cir. 2020) (unpublished decision);

*United States v. Slocum*, 646 F. App'x 294, 296 (4th Cir. 2016)

(unpublished decision); *United States v. Chon*, 713 F.3d 812, 822 (5th

Cir. 2013).

Five of the guideline errors Hoover alleges would not alone affect

Hoover's guideline range because they resulted in guideline increase of

two or fewer offense levels.   The application of the grouping rules

resulted in a two-offense-level increase.   J.A. 457 (¶ 58).   Adjustments

for a sexual act or contact, U.S.S.G. § 2G2.1(b)(2)(A), and the

defendant's relationship to the victim, U.S.S.G. § 2G2.1(b)(5), each

involved two-offense-level increases.   J.A. 455.   Section 2G2.2(c)(1)'s

cross-reference provision under the possession guideline did not result

in more than a two-offense level increase because Hoover's total offense

level would have remained at least 43 regardless of Hoover's adjusted

offense level under the possession guideline.   *See* J.A. 455–56 (¶¶ 37,

57, 60).   And the pattern-of-sexual-abuse adjustment under

§ 2G2.2(b)(5) did not have any effect on Hoover's total offense level.

54

*See* Argument § B.III.d.ii, *infra.* Any of these errors alone would not

warrant reversal of Hoover's sentence.

Although only one of the errors Hoover alleges would be

reversible, he has not established *any* error in the district court's

guidelines determination. And none of the arguments he raises for the

first time on appeal comes close to establishing a plain error.

### a.    The district court properly applied the Sentencing Guidelines' grouping rules.

The district court did not err, let alone plainly err, by placing

Hoover's offenses into two different "Group[s]" under the United States

Sentencing Guidelines' grouping rules, U.S.S.G. § 3D1.2. *Cf. Br. of*

*Appellant* 36–37. The district court properly assigned Hoover's two

production offenses involving different victims — one involving A.P. and

the other involving M.C. — to separate groups because "multiple counts

involving the exploitation of different minors" ordinarily "are not to be

grouped together under § 3D1.2." U.S.S.G. § 2G2.1(d) & comment

(n.7); *see also United States v. Toler*, 901 F.2d 399, 403 (4th Cir. 1990).

Hoover's contention, made for the first time on appeal, that

§ 3D1.2(c) required the court to place all three of his offenses in a single

group is misplaced.   That guideline ordinarily calls for counts to be
grouped when "*one of the counts* embodies conduct that is treated as a
specific offense characteristic in, or other adjustment to, the guideline
*applicable to* another of the counts."   U.S.S.G. § 3D1.2(c) (emphasis
added).   The probation office placed Hoover's production count
involving M.C. in the same group as his possession count.   J.A. 454.
And it appropriately determined, when calculating Hoover's *initial
offense level* under the possession guideline, that § 2G2.2(b)(5) called for
an adjustment because Hoover "engaged in a pattern of activity
involving the sexual abuse or exploitation of a minor."   Hoover
contends that § 2G2.2(b)(5) makes the conduct in his production counts
"conduct that is treated as a specific offense characteristic in, or other
adjustment to" his possession count.   J.A. 37.   Hoover's analysis of the
grouping rules is incorrect for at least two reasons.

First, § 2G2.2(b)(5) is an adjustment to § 2G2.2; it does not trigger
§ 3D1.2(c) because § 2G2.2 is not "the guideline *applicable to*" Hoover's
possession offense.   U.S.S.G. § 3D1.2(c) (emphasis added).   Section
2G2.2(c)(1)'s cross-reference directed the court to instead "apply" the

production guideline, § 2G2.1, to Hoover's possession offense.[1]   As
explained below, the district court properly did so.   *See* Argument
§ B.III.e, *infra*.   The district court did not use the offense level the
probation office had initially calculated by applying adjustments —
including the pattern adjustment — to § 2G2.2.   J.A. 455.   The pattern
adjustment of § 2G2.2(b)(5) on which Hoover relies played no role in the
"guideline applicable to" Hoover's offense, so it did not trigger
§ 3D1.2(c)'s grouping requirement.

Second, if § 3D1.2(c) did apply, it would require the court to group
with Hoover's possession offense only "one of the counts" that embodies
an adjustment to that offense.   U.S.S.G. § 3D1.2(c) & comment. (n.5);
*United States v. Jones*, 716 F.3d 851, 859 (4th Cir. 2013).   Because
§ 2G2.2(b)(5) "provides an adjustment for only one occurrence" of the
aggravating factor — the pattern of abuse or exploitation — only *one*
count representing that factor "is to be grouped with the other count."

---

[1]   "A cross reference to another offense guideline" does not trigger
U.S.S.G. § 3D1.2(c).   U.S.S.G. § 3D1.2, comment (n. 5).

U.S.S.G. § 3D1.2(c), comment. (n.5).   Any "remaining conviction" is

"treated separately" under the grouping rules.   *Id.*

The district court properly placed Hoover's production offense

involving M.C. in one group with his possession offense and "treated

separately" his "remaining conviction" for production involving A.P.

*Id.*   As explained below, *see* Argument § B.III.d, *infra*, Hoover's conduct

involving M.C. alone fully supports the § 2G2.2(b)(5) adjustment.[2]  Even

if § 3D1.2(c)'s general rule applied and controlled over the more specific

guidance for child-pornography offenses that § 2G2.1(d) provides, *cf.*

*United States v. Under Seal*, 709 F.3d 257, 262 (4th Cir. 2013),

therefore, it would not help Hoover.   And Hoover has not come close to

identifying "settled law of the Supreme Court or this Court"

establishing an error that qualifies as plain or obvious.   *Davis*, 855

F.3d at 595–96.

---

[2]  Hoover's relevant conduct involving victims not covered by any of
Hoover's convictions would also alone suffice to establish a pattern
under § 2G2.2(b)(5), *see* Argument § B.III.d, *infra*, so *neither* of Hoover's
two production counts would necessarily embody conduct treated as an
adjustment under that section.

**b.** **The district court properly applied U.S.S.G. § 2G2.1(b)(2)(A) because the offense involved "the commission of a sexual act or sexual contact."**

The district court properly applied a two-offense-level adjustment under § 2G2.1(b)(2)(A) of the Guidelines because Hoover's offense involved "the commission of a sexual act or sexual contact." *Cf. Br. of Appellant* 37. The masturbation that Hoover filmed involved "sexual contacts." U.S.S.G. § 2G2.1(b)(2), comment. (n.2); 18 U.S.C. §§ 2246(3); *see United States v. Shafter*, 573 F.3d 267, 272–73 (6th Cir. 2009). Hoover cites nothing in support of his counterintuitive contention that the enhancement cannot be based on the "very same acts" for which he was convicted. *Cf. Br. of Appellant* 37. But that contention would not help Hoover in any event, because his relevant conduct includes a host of additional sexual acts and sexual contacts with six other child victims. J.A. 452–454. The district court did not commit a plain or other error.

**c.**   **The district court properly applied § 2G2.1(b)(5) of the Guidelines because Hoover was a relative or person with custody, care, or supervisory control of the minor involved in the offense.**

The district court properly applied § 2G2.1(b)(5) of the Guidelines, which calls for a two-offense level adjustment if the defendant is a "relative" of the minor involved in the offense or "if the minor was otherwise in the custody, care, or supervisory control of the defendant." *Cf. Br. of Appellant* 38.   The guideline "is intended to have broad application and includes offenses involving a minor entrusted to the defendant, whether temporarily or permanently."   U.S.S.G. § 2G2.1(b)(5), comment (n.5(A)).

Hoover qualifies under each of the two parts of the guideline.   As the probation office found, Hoover was a relative of A.P. and M.C.   J.A. 470.[3]   And both boys testified that, as minors, they stayed at Hoover's house and were alone with Hoover regularly, including on the dates he recorded them.   J.A. 175–191, J.A. 197–208.   A.P. went on numerous

---

[3]   The details of Hoover's relationship to the victims appear in the sealed version of the trial transcript, *Sealed Trial Tr.* 117–18, 140–41, *United States v. Hoover*, No. 5:20CR88 (W.D.N.C. Filed Apr. 17, 2022) (Doc. No. 40), and the presentence report, J.A. 451–52.

camping trips with Hoover, slept in a cabin with him, and went on

hiking trips alone with him.   J.A. 206–08.   The court properly applied

the adjustment and did not plainly err.

> **d.   The probation office properly evaluated § 2G2.2(b)(5) of the Guidelines because Hoover engaged in a pattern of sexual abuse or exploitation, although the section ultimately played no role in Hoover's offense level.**

The district court did not misapply § 2G2.2(b)(5) of the Sentencing

Guidelines or come close to committing a plain error affecting Hoover's

substantial rights.   *Cf. Br. of Appellant* 39.   The probation office

evaluated § 2G2.2(b)(5) when determining Hoover's initial offense level

under the possession guideline.   But § 2G2.2(b)(5) played no role in

Hoover's ultimate guideline range because the probation office

discarded that initial offense level as directed by section 2G2.2(c)(1)'s

cross-reference requirement.

> **i.   The probation office properly evaluated § 2G2.2(b)(5) when determining Hoover's initial offense level under the possession guideline.**

The probation office properly evaluated § 2G2.2(b)(5) when

determining Hoover's initial offense level under the possession

guideline because Hoover "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." J.A. 455. Such a pattern "means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant." U.S.S.G. § 2G2.2(b)(5), comment (n. 1). The instances need not have occurred during the course of the offense, need not have involved the same minor, and need not have resulted in a conviction. *Id.* Hoover engaged in well more than a pattern of activity involving the sexual abuse or exploitation of a minor. J.A. 452–453.

Hoover's conduct with M.C. — the victim of the production count that the court grouped with Hoover's possession count, J.A. 454 — alone establishes a pattern of activity involving the sexual abuse or exploitation of a minor. In addition to the conduct Hoover filmed, on a separate occasion Hoover attempted to touch M.C.'s genitals for what was plainly a purpose of sexual gratification. And on another occasion, Hoover "put his mouth on" M.C.'s penis for "[p]robably two or three minutes." J.A. 182–84. This conduct alone establishes a pattern of

62

activity involving the sexual abuse or exploitation of a minor.   U.S.S.G.
§ 2G2.2(b)(5), comment (n. 1); 18 U.S.C. §§ 2241(c), 2243(a).

Hoover's conduct involving Minor Victim 6 also independently
establishes the requisite pattern.   Hoover began molesting that victim
when he was "between the ages of 4 and 7" and continued "for several
years."  J.A. 453.   Hoover forced the victim to perform oral sex on
Hoover and put his penis in Hoover's anus.   J.A. 453.

Hoover also got on top of Minor Victim 7, unsuccessfully
attempted to put his hand into the victim's pants, and stated that he
wanted to perform oral sex on the victim.   J.A. 453.   Hoover felt Minor
Victim 8's genitals multiple times and attempted to perform oral sex on
the boy.  J.A. 453.   Hoover touched the genitals of Minor Victims 3, 4,
and 5, multiple times, and exposed his own penis to Minor Victim 5 and
his friend.   J.A. 452–453.

Hoover's conduct with these minor victims overwhelmingly
supports the probation office's evaluation of the pattern adjustment.
Other than his conclusory assertion, Hoover does not identify any way

in which the "evidence was insufficient." *Br. of Appellant* 39.   He has

not established any plain or other error.

### ii.  The probation office's analysis of § 2G2.2(b)(5) is harmless.

In any event, the probation office's analysis of § 2G2.2(b)(5) is

harmless because it played no role in the total offense level and

guideline range the district court ultimately found.   The probation

office applied § 2G2.2(b)(5) only when calculating Hoover's initial

offense level under the child-pornography possession guideline,

U.S.S.G. § 2G2.2.   J.A. 455.   But the probation office discarded this

initial offense level after determining that § 2G2.2(c)(1)'s cross-

reference provision required it to instead apply the offense level

calculated under the production guideline, U.S.S.G. § 2G2.1(a).   The

district court adopted the cross-referenced offense level calculated

under the production guideline.   J.A. 455–56.   Because § 2G2.2(b)(5)'s

pattern adjustment played no role in the offense level the district court

used or sentence the court imposed, any error related to that

adjustment is harmless and did not affect Hoover's substantial rights.

64

*See United States v. Beasley*, 824 F. App'x 154, 158 (4th Cir. 2020)

(unpublished decision).

> **e.    The district court properly applied § 2G2.2(c)(1),
> which cross-references the guideline for production of
> child pornography.**

The district court properly applied § 2G2.2(c)(1) because Hoover's

offense "involved causing" or "permitting" a "minor to engage in

sexually explicit conduct for the purpose of producing a visual depiction

of such conduct."    *Cf. Br. of Appellant* 39.    Hoover's persuasion of A.P.

and M.C. to masturbate for the purpose of creating videorecordings and

still images of the conduct, J.A. 450–52, fully supports the court's

application of the guideline.    *See United States v. Cox*, 744 F.3d 305,

308–09 (4th Cir. 2014) (unpublished decision).    Contrary to the

argument Hoover presents for the first time on appeal, nothing in the

guideline requires a "convict[ion] for [a] violation of § 2251(d)(1)," *see id.*

*Cf. Br. of Appellant* 39.    The district court did not plainly or otherwise

err by applying the cross-reference provision.

65

**f.    The district court properly applied § 4B1.5(b)(1), because Hoover engaged in a pattern of activity involving prohibited sexual conduct.**

The district court properly applied § 4B1.5(b)(1), which ordinarily calls for a 5-offense-level increase for qualifying defendants who "engaged in a pattern of activity involving prohibited sexual conduct." Hoover does not dispute that he engaged in such a pattern. *Br. of Appellant* 40. Instead, he asserts for the first time on appeal that "there may be a valid question as to impermissible double counting under the facts and circumstances of a particular case." *Br. of Appellant* 40 (brackets omitted). This argument fails on its own terms because Hoover does not identify any "facts and circumstances" of his "particular case" that establish "impermissible double counting." *Id.* More importantly, this Court already has held that applying "§ 4B1.5(b)(1)" to the "same conduct" covered by another guideline does not constitute "*impermissible* double counting." *United States v. Dowell*, 771 F.3d 162, 170–71 (4th Cir. 2014) (emphasis added).

66

### 2. The district court appropriately considered Hoover's arguments for a lower sentence.

The district court appropriately considered and addressed Hoover's arguments for a downward-variance sentence. A court ordinarily must "address or consider all non-frivolous reasons presented for imposing a different sentence and explain why it has rejected those arguments." *Fowler*, 58 F.4th at 154. "When a district court has fully addressed the defendant's 'central thesis' during sentencing, it need not 'address separately each supporting data point marshalled' for a downward variance." *Id.* And "in a routine case" such as Hoover's, "where the district court imposes a within-Guidelines sentence, the explanation need not be elaborate or lengthy." *Id.*

Hoover presented three "central thes[e]s" in support of his request for a downward variance, and the district court "meaningfully considered" each one. *Id.* The court addressed Hoover's "argu[ment] that the sentencing guidelines for these kind of cases are overly harsh," and explained that it rejected the argument because it disagreed. J.A. 314. The court considered Hoover's argument about his history and characteristics and explained why it found them an "insufficient reason

67

to vary downward." J.A. 314. And it considered his argument based on the findings of the psychologists he had hired and explained that those findings gave the court no reason to doubt Hoover would "be a recidivist if given the chance." J.A. 315. The district court fully complied with its obligation to "conduct an individualized assessment based on the facts before the court and explain adequately the sentence imposed to allow for meaningful appellate review and to promote the perception of fair sentencing." *Fowler*, 58 F.4th at 153.

Hoover's criticism of the court for discussing the public perception of the child pornography guidelines, *Br. of Appellant* 41, is baseless. A purpose of the district court's explanation is to "promote the perception of fair sentencing." *Fowler*, 58 F.4th at 153. And purposes of the sentence itself include reflecting "the seriousness of the offense," promoting "respect for the law," and providing "just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). The district court's comments that it did not think "the public" would find the harshness of the child-exploitation guidelines appropriately reflected one of many reasons why a guideline sentence, although long, would be a fair sentence for a "child

68

predator" who victimized "at least eight" children "over the course of many years."   J.A. 314.

Hoover's argument that the district court failed to consider what he says is an "argument in the defense's Sentencing Memorandum as to 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,'" *Br. of Appellant* 41 (citing 18 U.S.C. § 3553(a)(6)), is misplaced for several reasons.   First, Hoover does not identify any place in the sentencing memorandum that he cited § 3553(a)(6) or made an argument based on it.   *See* J.A. 286–294.   "The district court is only required to address non-frivolous arguments a defendant actually 'presents.'"   *United States v. Odum*, 65 F.4th 714, 714 n.5 (4th Cir. 2023).   Second, even if he had presented this contention, the district court would not be required to address it separately because it fully considered Hoover's central theses.   *Fowler*, 58 F.4th at 154.   Third, the court explicitly "considered all of the factors in 3553(a)," J.A. 315, and "district courts are not required to 'robotically tick through 18 U.S.C. § 3553(a)'s every subsection, particularly when imposing a within-Guidelines sentence."

69

*United States v. Mack*, 56 F.4th 303, 307 n.2 (4th Cir. 2022) (cleaned up). Finally, the district court "'necessarily gave significant weight and consideration to the need to avoid unwarranted disparities' when it carefully reviewed and calculated" Hoover's "guidelines range at the sentencing hearing." *United States v. Sueiro*, 59 F.4th 132, 141–42 (4th Cir. 2023).

## CONCLUSION

Hoover received a fair trial and reasonable sentence. The United States, therefore, respectfully requests that this Court affirm the district court's judgment.

## REQUEST FOR DECISION ON THE BRIEFS WITHOUT ORAL ARGUMENT

The United States does not believe that oral argument will assist the Court in any material way and requests that this appeal be decided on the briefs.

70

Respectfully submitted, this 17th day of May, 2023.

DENA J. KING
UNITED STATES ATTORNEY
s/ Anthony J. Enright
Anthony J. Enright
NY Bar Number # 4485140
Assistant United States Attorney
227 West Trade Street
Carillon Building, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Fax: (704) 344-6229
E-mail: Anthony.Enright@usdoj.gov

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief has been prepared using Microsoft Word 2010, Century Schoolbook, 14 point typeface.

2.      EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains __12,831__ words.

        I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.   If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

                                s/ Anthony J. Enright
                                Assistant United States Attorney
                                USAO Charlotte, NC

## CERTIFICATE OF SERVICE

I certify that I have this day served a copy of the above upon Defendant herein by serving his attorney of record, David Burgess, through electronic case filing.

This 17th day of May, 2023.

s/ Anthony J. Enright
Assistant United States Attorney
USAO Charlotte, NC